IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

MICHAEL JOYCE,

Plaintiff,

v.                                         CIVIL ACTION NO. 1:26-cv-1224

ASCENSION HEALTH ALLIANCE,

Defendant.

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Michael Joyce ("Joyce") files this Amended Complaint against Ascension Health Alliance ("Defendant").

## SUMMARY

1. Defendant committed post-termination retaliation, breach of contract, and defamation when it set up an auto-reply announcing to anyone emailing Joyce's account that his employment was terminated. This auto-reply deviated from Defendant's practices involving other employees who did not engage in EEOC protected activity. Accordingly, Defendant's actions were retaliatory in violation of Title VII of the Civil Rights Act.

## THE PARTIES AND JURISDICTION

2. Plaintiff Michael Joyce is a natural person with standing to file this lawsuit.

3. Defendant Ascension Health Alliance is a Missouri private health system doing business in the Western District of Texas, Austin Division.

4. Defendant may be served with this Complaint through its registered agent, Corporation Service Company, at its registered address, 211 E. 7th Street, Suite 620, Austin, TX 78701, or through its counsel.

5. The Court has personal jurisdiction over Defendant based on specific jurisdiction.

-1-

6.      The Court has subject matter jurisdiction over this case based on federal question jurisdiction under Title VII of the Civil Rights Act.

7.      Venue is appropriate in the Southern District of Texas, Austin Division, because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

8.      Defendant employed Joyce as a Lead Data Scientist from approximately May 2019 to June 2023.  Joyce worked in Austin, Texas.

9.      In the wake of his separation, Joyce filed an EEOC Charge against Defendant in December 2023, alleging disability discrimination.  Joyce also complained of a hostile work environment and made complaints concerning his supervisor, Associate Vice President Ryan Orlowski ("Orlowski").

10.     On March 19, 2024, Joyce signed a confidential agreement to resolve his claims against Defendant.

11.     Per the agreement, Defendant agreed to categorize Joyce's separation as a voluntary resignation.

12.     The agreement also directed Joyce to send all reference inquiries to The Work Number, an automated third-party service that Defendant uses for employment verification purposes.  The Work Number in turn would limit the information it provided concerning Joyce's employment with Defendant to the position he held and his dates of employment.

13.     The healthcare data science industry is a small, specialized community where reputation and professional relationships drive career opportunities, and Joyce would not have signed the Agreement without such neutral references to the circumstances of his departure.

14.     On or about June 20, 2025, Joyce was horrified to learn that someone who works

for Defendant—likely Orlowski—had created a custom auto-reply to emails sent to Joyce's former work email address, michael.joyce@ascension.org, that read in part: "I regret to inform you that I am no longer with Ascension as my employment has been terminated." The auto-reply went on to direct those requiring immediate assistance to contact Orlowski through his work email.

15. Orlowski, Joyce's former supervisor, had both the motive and the means to carry out this retaliatory scheme against Joyce. Orlowski was aware of Joyce's protected activity. Joyce is aware that per Defendant's IT policy, email account permissions are automatically transferred to the departing employee's supervisor. Thereby, Orlowski or an agent working on his behalf, retaliated against Joyce.

16. Unlike the stock auto-replies for other employees who left Defendant's employment that did not mention the circumstances of their separation and were deactivated approximately three months after the employees left, Joyce's custom auto-reply violated the terms of the Agreement by stating that he was terminated and continued to do so for over two years. But for Joyce's EEOC protected activity, he would not have been subjected to this auto-reply from his email address, and his auto-reply would have been treated the same as other former employees.

17. After receiving notification of the defamatory and discriminatory auto-reply on September 5, 2025, Defendant responded on November 19, 2025, that "the out of office message has now been terminated."

18. While Defendant insisted that it was "investigating the origin of the out of office message," it is unclear what investigating, if any, has taken place as Joyce has received no further updates on the matter.

19. Joyce suffered harm each time a colleague in his industry sent an email to his old work email account and received the auto-reply informing the recipient that he was terminated.

This continued unabated for over two years, and Joyce is personally aware of several industry colleagues that received the auto-reply message.

20.    Joyce filed an EEOC Charge of Discrimination alleging retaliation on January 20, 2026, connected to his earlier EEOC Charge. Joyce was granted a right-to-sue on February 9, 2026.

21.    Defendant's retaliation has done damage to Joyce's professional reputation. Joyce now brings this lawsuit to secure recompense.

## TITLE VII CLAIM OF RETALIATION

22.    Joyce incorporates the preceding paragraphs of this Complaint.

23.    "[T]he purpose of Title VII is to protect employees from their employers' unlawful actions." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

24.    A retaliatory action is one that may well have dissuaded a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Being subjected to a discriminatory auto-reply email informing industry contacts of an employment termination would dissuade a reasonable employee from filing a charge of discrimination.

25.    Both pre-termination and post-termination retaliation violate Title VII.

26.    "To show post-termination retaliation in violation of Title VII, a plaintiff must make a prima facie showing: '1) that the plaintiff engaged in activity protected by Title VII; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.'" *Powers v. Broken Hill Proprietary (USA), Inc.*, No. H-21-1334, 2022 WL 17097437, at *10 (S.D. Tex. Nov. 21, 2022) (Rosenthal, J.) (internal quotations and citations omitted).

27.    An adverse employment action need not be an ultimate employment decision, such

as hiring, firing, demoting, or promoting. *Hamilton v. Dallas Cty.*, 79 F.4th 494, 506 (5th Cir. 2023). Instead, an employee need only show discrimination with respect to the terms, conditions, or privileges of employment. *Id.* "The discrimination is harm." *Muldrow v. City of St. Louis*, 601 U.S. 346, 364-65 (2024) (Kavanaugh, J., concurring).

28.    Like Title VII discrimination plaintiffs, Title VII retaliation plaintiffs are entitled to back pay, reinstatement or front pay, compensatory damages, punitive damages, attorney's fees, and costs of court. *See Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 429 (5th Cir. 2022).

29.    "A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Id.* at 439 (citing 42 U.S.C. § 1981A(b)(1)) (internal quotations omitted).

## DEFAMATION

30.    Joyce incorporates the preceding paragraphs of this Complaint.

31.    Defamation violates Texas state law. A defendant commits defamation if he (1) publishes a false statement; (2) that defames the plaintiff; (3) with the requisite degree of fault regarding the statement's truth; and (4) damages result. *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017).

32.    Defendant published a false statement in Joyce's email auto-reply regarding his termination. Because this statement negatively reflects on Joyce's career, business, or occupation and injures him professionally, it constitutes defamation per se.

33.    Joyce gave Defendant notice of this defamation through a letter from counsel dated September 5, 2025.

34.    Joyce has suffered damages from industry contacts viewing Defendant's

defamatory message.

## BREACH OF CONTRACT

35.    On March 19, 2024, Joyce signed a confidential agreement to resolve his claims against Defendant.   The agreement is a valid and enforceable contract between Joyce and Defendant.

36.    Section 13 of the agreement states the agreement "shall be governed and conformed in accordance with the laws of the state of Missouri…."

37.    Under Missouri law, the following elements are required for a breach of contract claim: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

38.    In this case, the agreement imposed mutual obligations on the parties, including Defendant's obligation to categorize Joyce's separation as a voluntary resignation.   In exchange, Joyce executed a release of claims.

39.    In Section 3 of the agreement, Defendant made specific promises regarding how Joyce's departure from employment would be characterized.

40.    In Section 11 of the agreement, Defendant clarified what kind of information would be provided in a reference inquiry.

41.    The auto-reply characterizing Joyce's departure as a termination contradicts and is inconsistent with the voluntary resignation status that the parties contractually agreed would reflect in Joyce's personnel file in exchange for Joyce releasing his prior causes of action against Defendant.

42.    When construed as a whole according to its fair meaning, the agreement's Resignation clause (Section 3) and Reference Inquiries clause (Section 11) establish a mutual understanding that Defendant would characterize Joyce's employment separation as a voluntary resignation, not as a termination.

43.    By broadcasting to third parties that Joyce's "employment has been terminated," written as if Joyce himself wrote it, Defendant communicated a characterization of Joyce's departure that is fundamentally different from and inconsistent with the voluntary resignation status Defendant promised to maintain, resulting in a breach of the parties' agreement.

44.    Section 11 established an exclusive mechanism for employment verification, limiting disclosed information to "position held and dates of employment."  The auto-reply provided additional characterization of the separation beyond the scope listed in the agreement.

45.    Defendant may argue that the auto-reply does not breach the agreement.  However, this limited reading evades the spirit of the agreement and would essentially render Section 3 meaningless, denying Joyce the benefit of the bargain and the expected benefit of the agreement.

46.    This breaches the covenant of good faith and fair dealing.  *See Milling Co., LLC v. River Valley AG Exch., LLC*, 733 S.W.3d 563, 573 (Mo. Ct. App. 2026) ("A party breaches the covenant of good faith and fair dealing if it exercises a judgment conferred by the express terms of the agreement in a manner that evades the spirit of the agreement and denies the other party the expected benefit of the agreement."); *see also Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Tr. Co., Inc.*, 464 S.W.3d 177, 185 (Mo. banc 2015) ("Under Missouri law, a duty of good faith and fair dealing is implied in every contract.").

47.    Thus, when construing the contract as a whole according to its fair meaning, Defendant breached Sections 3 and 11, in addition to the covenant of good faith and fair dealing.

48.     Defendant's breach was material because the way Joyce's employment separation is characterized directly affects Joyce's professional reputation in his field and affects his future ability to succeed in the marketplace.

49.     The reputational harm suffered by Joyce was a foreseeable and proximate consequence of Defendant's breach, as the parties contemplated at the time of contracting that the characterization of Joyce's employment separation would affect how professional contacts and prospective employers would view Joyce.

50.     Joyce has suffered damages as a direct and proximate result of Defendant's breach of contract, and he seeks to recover those damages.

## JURY DEMAND

51.     Joyce demands a jury trial.

## DAMAGES AND PRAYER

Joyce asks that he be awarded a judgment against Defendant for the following:

a.     Actual damages and economic losses;

b.     Loss of reputation damages;

c.     Reinstatement or front pay;

d.     Compensatory damages;

e.     Punitive damages;

f.     Pre-judgment and post-judgment interest;

g.     Court costs;

h.     Attorney's fees; and

i.     All other relief to which Joyce is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
MICHAEL JOYCE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon counsel of record listed below by electronic mail on the 23rd day of July 2026.

Melissa J. Ackie
Gregory Dimirsky
Littler Mendelson, P.C.
100 Congress Avenue, Suite 1400
Austin, Texas 78701
mackie@littler.com
gdimirsky@littler.com

/s/ Ahad Khan
Ahad Khan

-9-